IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-03451-PAB

TROY J. GRAY,

       Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

       Defendant.

_____

**ORDER**
_____

       This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Troy J. Gray on December 9, 2019.  Plaintiff seeks review of the final decision of the defendant (the "Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

## I.  BACKGROUND

       On April 19, 2017, plaintiff applied for social security benefits under Title II of the Act.  R. at 9.  Plaintiff alleged a disability onset date of February 26, 2017.[2]  *Id.*  After his claims were initially denied on August 22, 2017, plaintiff requested a hearing before an

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

[2] Plaintiff has been injured in accidents twice, *see* R. at 13, and his health problems have persisted for at least 30 years.  *See* R. at 78–85 (2017 disability determination explanation where plaintiff complained of these conditions arising 28 years ago).

administrative law judge ("ALJ").  *Id.*

On January 18, 2019, the ALJ issued a decision denying plaintiff's claim.  R. at 6.  The ALJ found that plaintiff had not engaged in substantial gainful activity since the onset date and had the following severe impairments: degenerative disc disease and obesity.  R. at 11.  The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526.  *Id.*  The ALJ also determined that plaintiff has non-severe impairments of a recent ankle fracture and diabetes.  *Id.*  Ultimately, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform light work with the following qualifications:

> [t]he claimant is able to sit for six out of eight hours and stand and walk for two out of eight hours.  He is able to occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl.  He must avoid ladders, ropes, or scaffolds.  He must avoid unprotected heights, moving mechanical parts, extreme heat and cold.  He can occasionally operate a motor vehicle, work in humidity, wetness, dust, fumes, odors, and pulmonary irritants.  He must avoid operation of foot controls on the left, and no more than occasionally exposure to vibrations.  He also requires the use of a cane for ambulation.

R. at 12.  The ALJ determined that plaintiff can perform past relevant work as a user support analyst.  R. at 14.

On October 7, 2019, the Appeals Council denied plaintiff's request for a review of the ALJ's decision.  R. at 1.  Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation and quotation omitted).  "The threshold for such evidentiary sufficiency is not high."  *Id.*  Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful

work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity that he
> is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether
> such work exists in the immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has
> a severe impairment; (3) whether the claimant's impairment meets an
> impairment listed in appendix 1 of the relevant regulation; (4) whether the
> impairment precludes the claimant from doing his past relevant work; and (5)
> whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  DISCUSSION

Plaintiff raises four objections to the ALJ's order: (1) the RFC assessment is inconsistent with the medical evidence of record; (2) the ALJ failed to properly consider the consistency between the medical evidence and plaintiff's subjective allegations of disabling pain; (3) the ALJ erred in discounting plaintiff's treatment records and opinions; (4) the ALJ erred in concluding that plaintiff is capable of performing highly skilled past relevant work.  Docket No. 12 at 5–19.  The Court addresses each in turn.

### A.  RFC Determination

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence.  *Id.* at 5.  First, he claims that the ALJ failed to consider the mental limitations resulting from the narcotic medication that plaintiff was prescribed to treat his pain.  *Id.* at 5–6.  Plaintiff states that this medication, prescribed by Dr. Daniel Hubbard, causes drowsiness and lack of concentration.  *Id.* at 6.  Adverse side effects from medication, plaintiff claims, must be considered in the RFC determination, and it was error for the ALJ not to take into account the mental limitations caused by these side effects because there is record evidence of plaintiff's impaired ability to maintain "concentration[,] persistence[,] or pace in a work setting."  *Id.*

For support, plaintiff cites evidence of his impaired ability to maintain

concentration.  *Id.*  However, while the evidence that plaintiff cites, mostly Dr. Hubbard's office records, shows that plaintiff has trouble concentrating, falling asleep, and staying awake, *see, e.g.*, R. at 256, 257, the record does not attribute these issues to plaintiff's medications,[3] and plaintiff's health questionnaire reflects that plaintiff had these issues only "several days" in the two weeks before his examination.  R. at 256.  Nor does the record explain what has changed since plaintiff's initial injury decades ago such that his trouble concentrating and with sleep have resulted in his not being able to work after February 26, 2017.  Indeed, the record indicates that while plaintiff complains of concentration and persistence limitations, "these conditions started 28 years ago, yet he has been able to work until 02/26/17."  R. at 81.  The ALJ also determined that though plaintiff complains that he has trouble concentrating, he plays video games, which "requires the ability to be responsive to instructions to navigate through the complexities of each level in order to achieve a specific goal and win the game."  R. at 13.

Plaintiff, relying on *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004), explains that evidence of the ability to watch television is a minimal daily activity that is not sufficient evidence that a claimant does not suffer disabling pain.  Docket No. 12 at 8–9.  The Court agrees that watching television and playing unspecified video games cannot, by themselves, properly support a finding that plaintiff was unable to concentrate, as the ALJ made no finding about what type of programs plaintiff watched

---

[3] The ALJ determined that the fact that plaintiff's medications were "PRN" prescriptions, i.e., as-needed, means that there were times when plaintiff did not require the medication as frequently and that plaintiff's pain was not chronic.  R. at 13.  Plaintiff argues that this conclusion of the ALJ's is "pure speculation" as to the hospital staff's medical judgment.  Docket No. 12 at 7.  Even if plaintiff is correct, however, this point is not conclusive and was not the sole basis of the ALJ's RFC determination.

or what degree of complexity was required for the video games that plaintiff played. *See Mondragon v. Apfel*, 3 F. App'x 912, 916 (10th Cir. 2001) (unpublished).  But it was not just plaintiff's video game playing that the ALJ relied upon.  Rather, there is other evidence to support the RFC determination, including that plaintiff testified that, despite allegedly suffering constant disabling pain, he is able to ride a motorcycle, drive a car, shop in stores, prepare meals, dine in restaurants, and spend time reading and watching television.  *See* R. at 13–14 (citing R. at 459 (riding motorcycle); R. at 180 (shopping in stores); R. at 181 (dining in restaurants with family and watching television)); ***see also* R. at 69 (testimony about reading); R. at 69–70 (testimony about riding motorcycle)**.  Moreover, the RFC is a determination of what a complainant can do *despite* impairments and limitations.  20 C.F.R. § 404.1545(a)(1).  As a result, plaintiff's arguments are unpersuasive, and the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record.

## B.  Subjective Allegations

Plaintiff argues that the ALJ applied the incorrect standard to his subjective allegations and thus failed to give them proper consideration.  Docket No. 12 at 9–11.  The Court must affirm the ALJ's conclusion regarding whether plaintiff's subjective allegations comport with the evidence in the record so long as there is substantial evidence.  *Ellison*, 929 F.2d at 536.  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty*, 515 F.3d at 1070.

As plaintiff notes, an ALJ must "consider all [of a claimant's] symptoms, including

pain, and the extent to which [a claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(a).  The ALJ must also "evaluate the intensity and persistence of [a claimant's] symptoms so that [the ALJ] can determine how [a claimant's] symptoms limit [a claimant's] capacity for work."  *Id.* § 404.1529(c).  But § 404.1529(a) also requires an ALJ to determine whether plaintiff's statements are consistent with the record evidence. *See also* § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence.").  Plaintiff argues that the ALJ's determination that the evidence "does not support a conclusion that the claimant has chronic pain that never varies in intensity," R. at 13, is neither supported by substantial evidence nor applies the proper standard.  Docket No. 12 at 10.  Rather, plaintiff insists that he need only show that his pain significantly interferes with his ability to work.  *Id.* (citing § 404.1529(a)).

The ALJ determined that, although plaintiff has complained of lower back pain and some tenderness, "examination showed normal range of motion in all major joints without tenderness to palpation or significant deformities," R. at 13, and further that plaintiff's allegations are "generally inconsistent with the record as a whole."  R. at 14. While plaintiff places great weight on the ALJ's statement that the evidence does not support a "conclusion that the claimant has chronic pain that never varies in intensity," R. at 13, this argument is unpersuasive for two reasons.  First, although the ALJ used "chronic pain that never varies in intensity," rather than a term that might more closely track the appropriate standard, the ALJ's analysis demonstrates that she considered all

8

of plaintiff's symptoms and medical records to determine whether plaintiff's allegations were consistent with the available evidence. *See, e.g.*, R. at 13 (citing R. at 459, 460, 465, 624, 639, 648 (inconsistent evidence of numbness in lower extremities)); *id.* (citing R. at 252, 262, 268, 704, 723, 732, 738 (evidence of normal muscle tone despite injury to nerve root of lumbar spine)); *id.* (citing R. at 454 (evidence of normal range of motion in all joints without tenderness or significant deformities)); *id.* (citing R. at 254, 259, 263, 269, 272, 277, 470, 492, 511, 517, 520, 522, 523 (prescription for gapapentin for symptoms)).  Second, the Court's duty on review is to determine whether there is substantial evidence in the record for the ALJ's decision to discount plaintiff's allegations.  Therefore, even if the ALJ applied the incorrect standard – though there is no evidence that she actually did – the Court would not reverse the ALJ's discounting of plaintiff's subjective allegations if that discounting is supported by substantial evidence.

First, the Court notes that the RFC limited plaintiff to light work and added several additional limitations, including regarding the time plaintiff may sit, stand, and walk, what he may be exposed to, what he may operate, and that he may use a cane to ambulate.  R. at 12.  Second, while plaintiff complained that he cannot work due to chronic back pain that radiates into his lower extremities and that is exacerbated by prolonged sitting, standing, and movement, he indicated that he requires no help with personal care and household chores, R. at 177–83, and that he can sit for four hours, and that he had no trouble alternating sitting or standing at work.  R. at 63 (no problem standing up and down at desk); R. at 72 (stating that he could possibly sit for four hours before he would be in pain).  There is, therefore, substantial evidence to support the ALJ's conclusion that plaintiff's symptoms were not as severe as he alleged.  The ALJ

9

noted that, though plaintiff's initial injuries to his back and left leg were caused by a motorcycle accident decades ago,[4] plaintiff still rides his motorcycle.  *See* R. at 13; R. at 69–70 (explaining that he now takes his motorcycle for short trips to the movie theatre or to a restaurant, but rode it to Sturgis, South Dakota in 2013 or 2014); R. at 459 (complaining of a March 2018 ankle injury from loading his motorcycle onto a trailer while preparing to leave on a trip).   In addition, the evidence indicates that plaintiff was able to work for decades, from August 1986 until February 2017, despite his 1980s motorcycle injury, R. at 170, and that he has normal range of motion without tenderness to palpation or significant deformities.  R. at 454; *see also White v. Barnhart*, 287 F.3d 903, 909–10 (10th Cir. 2001) (stating that courts should defer to the credibility determinations of the ALJ in resolving issues of subjective allegations).  Plaintiff cites no contradictory evidence.  Indeed, plaintiff notes that the ALJ is to "determine the extent to which . . . alleged functional limitations . . . can reasonably be accepted as consistent with the medical signs . . . and other evidence."  Docket No. 12 at 10 (quoting 20 C.F.R. § 404.1529(a)).  The Court finds that the ALJ's discounting plaintiff's subjective allegations to have been supported by substantial evidence in the record.

Plaintiff argues that the ALJ misapplied Social Security Ruling ("SSR") 16-3p, which accounts for individuals not always alleging the same intensity, persistency, or

---

[4] The ALJ noted plaintiff's complaints of pain caused by a motorcycle accident. *See* R. at 13; *see also* R. at 64 (confirming that his pain problems stem from a motorcycle accident in the 1980s); R. at 255 (moderate-severe leg pain that is constant and fluctuating); R. at 260 (fluctuating, persistent back pain); R. at 725 (leg pain and back pain); R. at 730 (back pain).  The ALJ also noted plaintiff's obesity, which she explained would exacerbate his other symptoms.  R. at 13 (citing R. at 253, 258, 261, 267, 273, 277, 283).

functional effects of their symptoms, since symptoms can vary. Docket No. 12 at 10 (quoting SSR 16-3p). But plaintiff provides no further argument or support that the ALJ failed to recognize that symptoms change and may vary in consistency beyond her possible misstatement of the standard. As a result, the Court finds that there is substantial evidence in the record to support the ALJ's conclusion that plaintiff's subjective allegations of limitations were not supported.

### C. Treatment Records and Opinions

Plaintiff argues that the ALJ used speculative lay opinion to discount the evidence of plaintiff's treating physician, Dr. Hubbard, who concluded that plaintiff's "physical condition produces pain and some days due to the pain [plaintiff was] unable to work" and is "unable to walk" or "do outdoor activities" in severe weather. Docket No. 12 at 11 (citing R. at 56). By concluding that plaintiff spends time reading, playing video games, and watching television, and therefore that plaintiff's allegations of difficulty concentrating are unsupported, plaintiff argues that the ALJ "ignore[d] the medical evidence." *Id.*[5] In addition, plaintiff argues that the effect of his injuries is cumulative. *Id.* at 13.

As to the objection that the ALJ discounted Dr. Hubbard's opinion, the ALJ found his opinion persuasive in some respects. R. at 13. The ALJ noted that Dr. Hubbard

---

[5] Plaintiff also objects that the ALJ made no attempt to develop the record on the issue of side effects. *Id.* at 12–13. Rather, plaintiff contends that she speculated about the skills required to play a video game as evidence that plaintiff can still concentrate and pay attention at his job. *Id.* at 13. These objections rely on the same arguments that the Court has already considered regarding the RFC determination and plaintiff's subjective allegations, and they need not be re-reviewed here. Moreover, there is little record evidence that plaintiff had concentration issues at work, except for his testimony, as he performed the same job after his injuries for many years.

opined that plaintiff is able to "perform a range of work similar to aspects of both the light or medium exertional level with various postural and environmental limitations." *Id.* As a result, the ALJ placed limitations in plaintiff's RFC regarding lifting and the use of assistive devices, but she found plaintiff's tolerance for sitting, standing, and walking to be inconsistent with Dr. Hubbard's opinion. R. at 13–14. Further, plaintiff overstates Dr. Hubbard's opinion. Dr. Hubbard determined that plaintiff could frequently lift up to 10 pounds, could occasionally lift up to 50 pounds, and could occasionally carry up to 10 pounds.[6] R. at 778. And, while Dr. Hubbard found that plaintiff can sit for 15 minutes and stand and walk for 20 minutes without interruption, he determined that plaintiff can sit for five out of eight hours per day with frequent breaks and can stand for one hour per day at five to ten minutes per time. R. at 779. This conclusion appears largely consistent with both the RFC and the opinion of Dr. Lawrence Landwehr, who performed a functional capacity assessment, and whom the ALJ found "considerably persuasive." R. at 14; R. at 786. Dr. Landwehr concluded that plaintiff can stand or

---

[6] Plaintiff appears to argue that the ALJ erred in finding a severe impairment of "degenerative disc disease" rather than "sciatic nerve injury," which Dr. Hubbard found that plaintiff suffered from. *See* Docket No. 12 at 4, 15; Docket No. 14 at 3. Plaintiff does not explain, however, how or why this alleged problem with the ALJ's determination affects any of the errors that plaintiff claims in his opening brief. Relatedly, plaintiff argues that the ALJ's findings are inconsistent with examination findings that show atrophy of plaintiff's left leg, no feeling in his left leg, and left foot drop. *See* Docket No. 14 at 3; *see also* Docket No. 12 at 15. The ALJ, however, considered these issues and found that, despite injury to the nerve root of his lumbar spine, examination showed normal lower extremity muscle tone and paraspinous muscle tone. R. at 13 (citing R. at 252, 262, 268, 704, 723, 732, 738). The ALJ also found that the record also shows that plaintiff has normal range of motion in all joints without tenderness or significant deformities, *id.* (citing R. at 454), and the ALJ found that plaintiff's complaint of numbness in his lower extremities was not consistent in the record. *Id.* (citing R. at 459, 460, 465, 624, 639, 648).

12

walk at least two hours out of an eight hour day, with normal breaks, and can sit for about six hours in an eight hour day, with normal breaks. *Id.* This is further supported by plaintiff's testimony at the hearing. R. at 72 (stating that he could sit for four hours). The ALJ found that Dr. Landwehr's conclusion is more consistent with the record as a whole, given that plaintiff is able to ride a motorcycle, operate a vehicle, and shop for personal items. R. at 14. Indeed, plaintiff continued to ride his motorcycle and was preparing for a long motorcycle trip when he suffered his March 2018 ankle injury, from which he appears to have largely recovered. R. at 65–66, 459; *see also Raymond v. Astrue*, 621 F.3d 1269, 1273 (10th Cir. 2009) (ALJ reasonably noted claimant sometimes rode his motorcycle for 50 miles); *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (claimant's ability to drive a standard-shift vehicle supported a finding that he was not disabled). Furthermore, it was reasonable for the ALJ to give Dr. Landwehr's opinion on plaintiff's capacity great weight, since Dr. Landwehr is a state agency medical expert and is an expert in social security disability evaluations. *See* 20 C.F.R. § 404.1527(e); *see also Hamlin*, 365 F.3d at 1215 (if ALJ relies on opinion of nontreating physician, ALJ must explain the weight given to that opinion and how the opinion is weighed given treating physician's opinion); *Martinez v. Comm'r of Soc. Sec.*, 777 F. App'x 930, 936 (10th Cir. 2019) (unpublished) ("As a State agency medical consultant, Dr. Matus is a highly qualified expert in Social Security evaluation."); *Andersen v. Colvin*, 541 F. App'x 842, 846 (10th Cir. 2013) (unpublished) (ALJ "properly gave more weight to the opinion of the state agency physician"); *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) (unpublished) ("State agency medical

consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.").  Though plaintiff states that the only contradiction to Dr. Hubbard's conclusion is that the ALJ noted that, despite plaintiff's foot drop, he has normal muscle tone and an adequate range of motion, this argument ignores Dr. Landwehr's findings.

Further, the Court finds that plaintiff places improper emphasis on the ALJ's negative inference regarding plaintiff's ability to read, watch television, and play video games.  Plaintiff accuses the ALJ of substituting her own lay opinion for the medical opinion of Dr. Hubbard and of basing her finding not on objective evidence.  Docket No. 12 at 11–13.  As explained above, however, while the ALJ may have assumed that plaintiff was playing complex video games, it was not just plaintiff's video game playing that the ALJ relied upon.  Moreover, plaintiff's argument ignores the ALJ's consideration of the evidence as a whole and further contradicts the rule that "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004); 20 C.F.R. § 404.1546(c) (ALJ assesses RFC); *see also Romo v. Comm'r, Soc. Sec. Admin.*, 748 F. App'x 182, 186 (10th Cir. 2018) (unpublished) (holding that ALJ did not substitute his own opinion for physician's in discounting doctor's opinions because "[t]he ALJ simply determined that [the physician's] sitting, standing, and walking limitations were not supported by objective evidence, which is a legitimate basis for the ALJ to afford the opinion less weight").

In support of his argument that plaintiff's injuries are cumulative, plaintiff notes that he first injured his back and left leg in 1989, "severing a lumbar nerve and leaving

14

him in lifelong need of a cane." Docket No. 12 at 13. Then, he fractured his right ankle when his motorcycle rolled over him. *Id.* The ALJ, however, considered both of these injuries – indeed, the motorcycle accident is the principal cause of plaintiff's injuries, *see* R. at 64 – and determined that the ankle fracture does not more than minimally limit plaintiff and is not severe, as it is not expected to be durational and is accommodated with limitations. R. at 11 (citing R. at 311, 327, 332, 335). Furthermore, the ankle injury occurred after plaintiff's claimed injury onset date of February 26, 2017. *Id.* The Court thus finds substantial record evidence for the ALJ's determination that plaintiff's reported activities of daily living are generally inconsistent with the degree of functional limitation alleged.

### D.  Ability to Perform Past Relevant Work

Finally, plaintiff challenges the ALJ's determination that plaintiff's past relevant work ("PRW") as a user support analyst for a phone company could be performed "generally" and "actually." Docket No. 12 at 15. Plaintiff argues that, if the ALJ's assessment of the RFC is to be sustained, plaintiff cannot perform his PRW as generally performed because that job requires duties that are beyond what is contemplated in the RFC, since the RFC did not include the plaintiff's mental or cognitive limitations attributable to pain and concentration. *Id.* at 16. As support, plaintiff states that, at the hearing, when he was asked why he could not return to his previous job, he stated that he could not make decisions at work due to concentration problems, and there is no evidence that plaintiff has these abilities now. *Id.* Moreover, if the standard is "actually" performed, plaintiff states that the ALJ must develop the

record by questioning the claimant, who is the best source of information on how his job was actually performed, and that plaintiff testified that he is unable to perform his PRW because he cannot concentrate enough to make correct decisions and because he missed too much work.  *Id.* at 16–18.

At this stage of the analysis, if a claimant is able to perform past relevant work, the claimant is not disabled.  *See* 20 C.F.R. § 404.1520(f) ("If you can still do [past relevant work], we will find that you are not disabled.").  The ALJ determined that plaintiff is able to perform his PRW after hearing from a vocational expert who testified that a hypothetical individual with the same "vocational profile" as plaintiff could perform the plaintiff's PRW.  R. at 15; R. at 72–76.  The ALJ further determined that the PRW does not require any activity precluded by claimant's RFC.  *Id.*; *see* Dictionary of Occupational Titles ("DOT") # 032.262-010, 1991 WL 646554 (defining plaintiff's PRW as a "sedentary" job requiring only brief or occasional standing and walking).  This is further supported by plaintiff's statement at the hearing that it was not a problem that he was "standing up and down at the desk."  R. at 63–64.[7]  In addition, it was appropriate for the ALJ to base her determination in part on the testimony of a vocational expert's response to hypothetical questions.  *See Lately v. Colvin*, 560 F. App'x 751, 755 (10th Cir. 2014) (unpublished); *see also* 20 C.F.R. § 404.1560(b)(2).  As a result, there is substantial evidence in the record to support the ALJ's conclusion that plaintiff could return to his PRW.

## V.  CONCLUSION

[7] Plaintiff stated in his work history report that his job required sitting and standing for approximately three hours and 45 minutes per day.  R. at 215.

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is

**AFFIRMED**.  It is further

**ORDERED** that this case is closed.


DATED March 29, 2021.

                                    BY THE COURT:



                                    _____
                                    PHILIP A. BRIMMER
                                    Chief United States District Judge